(No. 14668.—Decree affirmed.)

JAMES M. ROBNETT et al. Plaintiffs in Error, vs. F. B. MIL-
LER et al. Defendants in Error.

*Opinion filed June 21, 1922.*

1. APPEALS AND ERRORS—*when a freehold is involved.* A free-
hold is involved where the necessary result of the judgment or
decree is that one party gains and the other loses a freehold es-
tate, or when the title is so put in issue by the pleadings that the
decision of the case necessarily involves a decision of such issue;
and a writ of error is properly sued out of the Supreme Court
where a reversal of the decree will cause one party to lose a free-
hold and the other to gain such estate.

2. DEEDS—*what evidence necessary to have a deed declared a
mortgage—burden of proof.* To warrant the court in declaring a
deed absolute in form to be a mortgage, the evidence must be
clear, definite, unequivocal, convincing and satisfactory, and the
burden rests upon the party asserting that the deed is a mortgage
to show that fact by such evidence.

3. SAME—*party asserting that deed is a mortgage must show an
equity in the transaction.* A party asserting that a deed absolute
in form is a mortgage must show the existence of an equity in
the transaction contrary to the terms of the deed; and the mere
allegation of a contemporaneous understanding inconsistent with
the terms of the deed, but independent both of the deed itself and
of the understanding when it was executed, is not sufficient.

4. SAME—*when equity will enforce forfeiture in contract for
sale of land.* While forfeitures are not regarded with favor by
courts of equity, yet if the parties·have made time of the essence
of the contract a court of equity has no more right than a court
of law to dispense with the express stipulation of the parties, where
no fraud, accident or mistake has intervened; and equity will carry
out a forfeiture provision in such a contract for the sale of land
where its enforcement cannot be regarded, under the evidence, as
being inequitable.

WRIT OF ERROR to the Circuit Court of Marion county;
the Hon. THOMAS M. JETT, Judge, presiding.

L. B. SKIPPER, and E. B. VANDERVORT, for plaintiffs
in error.

WHAM & WHAM, and NOLEMAN, SMITH & DALL-
STREAM, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Marion county
asking to have a deed to nine lots in Centralia, in said
county, declared a mortgage. Defendants in error answered
the bill denying that the deed was a mortgage, and filed a
cross-bill, in which they asked that a certain contract be de-
clared forfeited and that a deed given by plaintiff in error
James M. Robnett to his son, C. C. Robnett, to two of said
lots, might be canceled. After the pleadings were settled
the case was heard by the chancellor, and a decree was en-
tered in favor of defendants in error on their cross-bill, the
original bill as amended being dismissed for want of equity.
The case has been brought here by writ of error.

In March, 1905, James M. Robnett and his wife, he
then being the owner of twelve lots in Schoolsite addition
to Centralia, conveyed them by warranty deeds to A. H.
Young. In April, 1907, Young and his wife conveyed the
lots by warranty deed to defendant in error Isaac O. Hes-
ter, and on the same date Hester entered into a contract
with Robnett by which it was agreed that Hester would con-
vey the twelve lots to Robnett for a consideration of $1500,
and Robnett agreed to pay the consideration for the same
on or before April 2, 1908, with interest at seven per cent,
Robnett to pay the taxes and assessments levied subsequent
to the year 1906. The contract contained a provision that
in case of failure of the second party to make either of the
payments or any part thereof, or perform any of the cove-
nants on his part, the contract should, at the option of the
first party, be forfeited and determined and the second party
should forfeit all payments made by him, and such pay-
ments should be retained by the first party in full satisfac-
tion and in liquidation of all damages by him sustained,
and he should have the right to re-enter and take posses-

sion of the premises. The contract also provided that time should be the essence of the contract. There was a further provision that the first party agreed to execute and deliver a good and sufficient deed to the second party of any lot described in the contract on the payment of $125 and interest to the first party, and that the second party might have deeds to any or all of such property under the same terms and conditions. The record shows that in 1908 Robnett paid Hester $375, and Hester deeded him three of the lots in accordance with the provisions of the contract. The record also shows that under this contract between Robnett and Hester, Robnett made other payments, one of $40 on October 9, 1907, one of $65 on April 2, 1908, and one of $5 at a date not shown. On May 22, 1920, Hester conveyed the nine lots in question still standing in his name to defendants in error B. M. English and F. B. Miller, the deed to them stating that it was subject to the contract dated April 2, 1907, between Hester and Robnett. English and Miller, on the day they received the deed, or very shortly thereafter, served a notice on Robnett stating that he had defaulted in the terms agreed upon in the contract and had been in default since November 6, 1913, and had suffered the premises to be sold for non-payment of taxes, and that English and Miller thereby declared the contract forfeited and determined, and that all payments made thereon were forfeited and would be retained by them in full satisfaction and liquidation of all damages unless Robnett should, on or before June 2, 1920, pay the balance due, and interest, and refund all moneys paid for taxes. It does not appear from the record that Robnett took any steps in response to this notice within the time therein mentioned or communicated in any way with defendants in error with reference to the same. The record shows that on July 24, 1920, Miller and English entered into a contract with a builder for the construction of two houses on the property, costing approximately $2000 each, the houses to be com-

pleted during the summer. In September, 1920, after the completion of said houses, this bill was filed in the circuit court. The record also shows that Robnett and his wife conveyed to their son, Chauncy, two of the lots in question in June, 1913. Chauncy testified that he paid his father $510 for one of these lots in installments, and that the other lot was a present to him from his father. Young, who received the deeds from Robnett for the twelve lots and afterwards conveyed the nine lots here in question to Hester, died some time before the trial.

Counsel for defendants in error argue that this court does not have jurisdiction of this case but that it should have been taken to the Appellate Court, as no freehold is involved. This court has held that a freehold is involved, "within the sense of the constitution and statute, only in cases where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or when the title is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue." (*Prouty* v. *Moss*, 188 Ill. 84; *Malaer* v. *Hudgens*, 130 id. 225; *Sanford* v. *Kane*, 127 id. 591.) In case the decree of the circuit court should be reversed in this proceeding Miller and English would lose a freehold and Robnett and his son would gain such a freehold. The writ of error was properly sued out direct to this court.

Plaintiffs in error claim that the original deeds to these lots from James M. Robnett and wife to Young were given as security for an indebtedness and were in the nature of mortgages, and that the deed from Young and his wife to Hester was given with the understanding between Robnett, Young and Hester that it should be taken as security for the indebtedness owed by Robnett to Young and thereafter to Hester. Section 12 of chapter 95 of our statutes provides: "Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in

terms, shall be considered as a mortgage." (Hurd's Stat. 1921, p. 2150.) To warrant the court in declaring a deed absolute in form to be a mortgage, the evidence must be clear, definite, unequivocal, convincing and satisfactory. *Friend* v. *Beach,* 276 Ill. 397; *Helm* v. *Boyd,* 124 id. 370; *Fisher* v. *Green,* 142 id. 80; *Illman* v. *Kruse,* 301 id. 408.

The principal testimony on behalf of plaintiffs in error on the point that the deed was given as security for money loaned was that of James M. Robnett. He testified that he was seventy-three years of age at the time of the hearing, and while evidently very firm in the belief that the deeds from himself to Young, and from Young to Hester, were given as mortgages, we are unable to ascertain from his testimony, or any other evidence in the record, when or in what amounts any money was loaned by Young to him, or what rate of interest was to be paid, or when the loans were to be due, so far as relates to the transaction between Robnett and Young. It is evident that Robnett himself had no clear recollection as to when the transactions as to various loans between himself and Young took place, or what the amounts were, or what the agreements were with reference to the same. There is no evidence in the record before us upon which to base a clear and definite decree as to the existence or the terms of an indebtedness for which the deed from Robnett to Young might be considered as security. As we understand their argument, counsel for plaintiffs in error insist that Robnett borrowed the money from Hester to pay his indebtedness to Young, and that Young, as a part of the same transaction, then deeded the lots to Hester, and that this deed from Young to Hester was understood, in effect, to be a mortgage given by Robnett to Hester. The record shows that Hester is a brother of Sarah E. Young, wife of A. H. Young. Mrs. Young testified that her understanding was that at the time the deed was made to her brother by herself and husband her brother had furnished the money to pay her husband off,

and that these lots were deeded over to him for that money. It is obvious, however, from a reading of her testimony, that she had no definite information on this subject as to the conveyance of this property by her husband to Hester.

This court has said that the rights purporting to be conveyed by deed absolute in form must be taken as being such rights unless the parties show an equity to the contrary, and that the mere allegation of a contemporaneous understanding inconsistent with the terms of the deed but independent both of the deed itself and of the understanding with which it was executed is not such a showing to the contrary; that "the right must be one paramount to and independent of the terms of the deed as well as of any understanding between the parties at the time it was executed. Parol evidence is admissible so far as it conduces to show the relations between the parties or to show any other fact or circumstance of a nature to control the deed and to establish such an equity as would give a right of redemption, and no further. In the application of this rule parol evidence is received to establish the fact that a debt existed or that money was loaned on account of which the conveyance was made, for such facts will in a court of equity control the operation of the deed." (*Kelly* v. *Lehmann, 297* Ill. 33. See, also, to the same effect, *Sutphen* v. *Cushman,* 35 Ill. 186.) This court has frequently held that the burden rests upon the one asserting a deed absolute in form to be a mortgage to show that fact by clear, satisfactory and convincing proof. (*Totten* v. *Totten,* 294 Ill. 70, and cases there cited.) The evidence in the record is not at all clear as to what understanding there was, if any existed, other than what the deed itself showed, between Young and Hester at the time the deed was made, or whether Hester himself had any talk with Robnett, at the time Young made the deed to him for these lots, as to the nature of the transaction. It is true that Robnett did state in one portion of his testimony that Hester was present at the time the deed

was made by Young to Hester, and that the contract between Hester and himself as to his right to redeem the property was executed at the same time, but it appears manifest upon further examination of Robnett's testimony that he was not at all certain that Hester was present, and it is quite obvious from the contract itself that Hester was not present, because it shows it was signed for him by Young. It is also evident that Robnett himself was not sure that he had any talk with Hester as to the deed being understood to be a mortgage.

The record does not show the evidence to be of such clear, satisfactory and convincing character as to justify the holding that the deed from Young to Hester was taken as a mortgage to protect the payment of a loan by Robnett. Moreover, there is nothing shown in this record that would tend strongly to prove that the deed from Hester to Miller and English was taken with any understanding on the part of the grantees that the deed from Young to Hester was taken as security for a debt. It is true, the deed to Miller and English was made subject to the contract of April 2, 1907, between Hester and Robnett, of the existence of which contract they were informed, but there is nothing in the record to show that they had any notice that Robnett claimed the deed to Hester was only a mortgage. The record shows that nothing had been paid on the contract between Robnett and Hester for about twelve years. The only money paid under said contract, other than the $375 for the three lots which were deeded to Robnett, was $110, which would only be a little more than one year's interest. It is conceded that Robnett had paid the taxes on the lots in question after making the contract, with the exception of one year in which the lots were sold for taxes and redeemed by Hester. The circumstances shown in this record would indicate, in some degree, there might have been some sort of an understanding between the parties to the contract that Robnett might be allowed to complete it

even though he had defaulted for some space of time on the principal, but there is nothing to indicate that Miller and English had any idea that Robnett or his son had any right to consider the deed to Hester simply a mortgage, or to obtain the title to any of these lots by paying $125 and interest therefor. Miller and English gave Robnett notice that the contract was forfeited unless he paid the amount due in ten days. During that time he did not communicate with them so far as shown by the record, and it also appears that he allowed them to improve two of the lots with houses costing over $2000 each,—an amount much greater than Robnett could have redeemed these two lots for under the contract. It is true, as contended by counsel for plaintiffs in error, that forfeitures are not regarded with favor by courts of equity, but this court has held consistently that parties to a contract for the sale of land may make time the essence of the contract. (*Tyler* v. *Young,* 2 Scam. 444; *Glover* v. *Fisher,* 11 Ill. 666; *Morgan* v. *Herrick,* 21 id. 481; *Bishop* v. *Newton,* 20 id. 175; *Wynkoop* v. *Cowing,* 21 id. 570; *Murphy* v. *Lockwood,* 21 id. 610; *Dennis* v. *McCagg,* 32 id. 429; *Sanford* v. *Emory,* 34 id. 468; *Milnor* v. *Willard,* 34 id. 38; *Cunningham* v. *Illinois Central Railroad Co.* 77 id. 178.) A court of equity has no more right than a court of law to dispense with an express stipulation of parties in regard to time, in contracts of this nature, where no fraud, accident or mistake has intervened. (*Heckard* v. *Sayre,* 34 Ill. 142.) The contract of April 2, 1907, between Robnett and Hester stated in clear terms that time was the essence of the contract, and it certainly cannot be held that the enforcement of this forfeiture against Robnett, under the contract and the evidence shown in the record, is in any manner harsh. On this record, to find that the deed from Young to Hester was simply given as security for the indebtedness of Robnett would be, as against the rights of Miller and English, most unjust. Without question, the evidence in the record

is not of that clear, convincing and satisfactory character to justify any such conclusion.

The chancellor rightly dismissed the original bill for want of equity. The decree of the circuit court will be affirmed.

*Decree affirmed.*