JESSE F. MILLER, impleaded, &c., Plaintiff in Error, v. AMORY THOMAS et al., Defendants in Error.

ERROR TO COOK CIRCUIT COURT.

Where an absolute conveyance of land is made, and an agreement, at the same time, taken back by the grantor for a resale or reconveyance, upon payment of a certain sum of money by a day certain: —

*Held*, in equity, that such conveyance was only a mortgage.

*Held*, also, that in cases of this sort, the real character of the arrangement may as often be gathered from the nature of the transaction and character of the circumstances, as from the express declarations of the parties.

Parol evidence is admissible, to show that a conveyance absolute on its face was intended as a security for payment of money, when it will be treated in equity as a mortgage.

If, however, before redemption, such property is sold to a *bonâ fide* purchaser, who makes valuable improvements thereon, on the supposition and belief that he has good title, and not with a view of enhancing the redemption money, a court of equity will allow him for such improvements, on application to redeem.

THE bill in this case alleges, that Samuel Edwards, in his lifetime, in June, 1843, being seized in his own right of a certain piece of land in McHenry county, made and executed to Hiram Brown a deed of conveyance of the land, which, though absolute on its face, was made and executed by way of mortgage, to secure the payment of $195, then due from Edwards to Brown, with twelve per cent. interest, and that Brown, at the same time, to secure Edwards the right of redemption, executed and delivered to him a deed of defeasance, namely, a bond, conditioned, that if Edwards should pay the money and interest by the day named, Brown agreed to deed the land to Edwards; but upon the failure of Brown to pay, Edwards had the right to declare the contract forfeited and determined, and to enter upon and take possession of the land, and have and retain the same; the covenants to extend to the heirs and personal representatives of the parties.

That, in September, 1843, Edwards died, leaving a will, making the present defendants in error his devisees and executors. That, in November, 1843, Brown made and executed to Jesse T. Miller, a quitclaim deed of the same land. That Miller, when he took his deed, was informed of all the transactions between Edwards and Brown. That the money was not paid by Edwards at the time agreed upon, but is still running at interest. That the money due has been tendered by the executors to Miller, and a conveyance of the land demanded, which

had been refused. That the land remained in the possession of Edwards and his executors until May, 1845, when Miller took possession, and cultivated and used the land. 'Prays a decree that the land may be given to the heirs, &c., of Edwards.

Miller answered, alleging that the conveyance from Edwards to Brown was absolute, and that the bond was intended as a conditional sale, and that Edwards might repurchase, and that if the money was not paid to Brown by Edwards on the day named, the right of Edwards to repurchase should be forfeited and determined, and the purchase by Brown of Edwards should be absolute. Denies that the bond was intended to operate as a defeasance, but avers that it was executed to secure to Edwards the right to repurchase the land, by paying Brown the money due Brown, on the 1st day of November, 1843. That Edwards did not sign the bond; that it was, therefore, void, for want of mutuality. That the price paid Edwards by Brown was a fair price for the land. That the land was conveyed by Brown to Miller for $251. Denies that he knew Brown held the land by mortgage, and claims to be a *bonâ fide* purchaser.

The answer of Brown was in substance like that of Miller. Proofs were taken.

In 1842, at the sitting of the Cook County Circuit Court, HUGH T. DICKEY, Judge, presiding,. it was decreed, that the deed should be considered a mortgage, and that Miller should convey to the executors of Edwards, in trust, for the devisees, on payment of $405, which was the principal and interest then due on the advance by Brown to Edwards. Thereupon Miller sued out this writ of error.

MORRIS and CHICKERING, for plaintiff in error.

GRANT GOODRICH, for defendants in error.

CATON, J. After a careful consideration of the evidence in this case, we are inclined to concur with the court below, that this transaction should be treated as a mortgage. Edwards was indebted to Brown upon a note executed by himself and Dawson, in the sum of $195, which he was not prepared to pay; and it is evident that a negotiation was had between the parties for further time, which had resulted in an agreement upon terms, except as to the nature of security. Upon this subject, Shephard was consulted, who suggested, that if he took a mortgage it would take as long to collect it as it would to sue the note. He then said he would buy the land, but in such a way that he could sell it at a certain day, for he would not have his

money out of his hands, beyond his control. The result was a conveyance of the land from Edwards, and an agreement for a resale or conveyance, upon the payment of the amount due upon a certain day. There is much evidence given of the declarations of the parties, as to their intentions, made not only at the time of the transaction, but subsequently, which it is unnecessary to recapitulate minutely. As is generally observed in such cases, the strength of the declarations testified to vary very much, according to the inclination of witnesses, and the form of the questions put to them, eliciting the answers. Upon the whole, it is manifest, that it was the intention of both parties to provide the strongest security possible for the payment of the money designed to be secured, at the day stipulated; but, after all, it was only as security that the conveyance was made. While, on the one hand, Edwards stated, if he did not pay the money at the time agreed upon, he must lose his land; on the other, Brown stated, that he held the land as security for the payment of the money. The original note was probably given up at the time the deed was made, but the amount to be paid was specified in the agreement to reconvey, which constituted the defeasance. That contained a covenant on the part of Edwards to pay the amount of the note, with twelve per cent. interest. This covenant to pay $195, with interest, superseded the necessity of retaining the note, and made it proper and consistent that it should be given up. In cases of this sort, the real character of the arrangement may as often be gathered from the nature of the transaction and character of the circumstances as from the express declaration of the parties. These, when considered, can leave the mind in but little doubt on the subject. It is manifest, beyond contradiction, that Brown did not wish to become the real purchaser of the land; but he wanted his money at the time agreed upon. Edwards did not wish to part with the land, but desired to give Brown the most perfect security upon it, that the money should be promptly paid. The value of the land, as compared with the amount of money to be paid, is strongly indicative of the character of the transaction. The land was worth from $600 to $800, while the money due and to be secured was but about $200. Both parties expressed the intention at the time of the transaction, that if the money was not paid at the day stipulated, Brown should have the right to sell the land to the first purchaser, to raise the money. Could it have been the intention of the parties, that Brown should retain the surplus of the money to be realized for the land after paying the amount due him? That would clearly have been carrying the transaction beyond the evident intention of both

parties. No speculation was designed for Brown, but a security that he should certainly realize his money. If that was the case, then the arrangement amounted to a mortgage. If it was a mortgage at the time, it must ever bear that character. The agreement to reconvey upon the payment of the amount for which the conveyance was made, with interest, was made at the same time of the conveyance, and in pursuance of the same agreement, and was a part of the same transaction ; and they must both be taken together, as constituting one entire arrangement, as much so, indeed, as if they had both been written upon the same piece of paper, and expressly referring to each other. Had they been thus executed, they would have constituted a mortgage, not only in substance, but in form also. A court of chancery disregards the form, and seeks for the substance of the transaction. It is by no means necessary, in order to constitute a mortgage, that the deed and defeasance should be contained in the same instrument, or that they should even refer to each other. Their connection may be shown by parol. Indeed, it is not absolutely necessary that the defeasance should be in writing at all. The conveyance may be absolute on its face, and yet it may be shown, by parol, that it was intended only as a security for the payment of money, when it will be treated in equity as a mortgage. These principles are too familiar to require authorities for their support.

This is a case, however, where we are of the opinion, that the purchaser was entitled to the value of the improvements, which he had made upon the premises, during the time he was in possession under the title which he had purchased. There is no reason to doubt that he supposed that his title was good, and that he made the improvement in good faith, believing the land to be his own, and not with the view of enhancing the redemption money. In addition to this, the executors, whose business it was to redeem the land from the mortgage, stood by and saw the improvements made, without asserting their right, and expressing their intention to redeem. Loomis testifies, that in a conversation he had with Henderson, one of the executors, relating to the improvements which Miller was making on the premises, when Harvey, another executor, stated that " it would be time enough for Miller to quit when the executors forbid him." Improvements thus made in good faith, and especially when made with the knowledge, and without the disapprobation of the executors, should be allowed to the purchaser when the party applies to a court of equity to redeem. The decree will, therefore, have to be reversed, and the suit remanded, with instructions to the circuit court to make a reasonable and just

allowance to Miller, for the value of the improvements which he has placed upon the premises. 4 Paige, 58.

It may also be remarked, that interest should have been allowed between the time of entering the decree and the payment of the redemption money. This was no doubt omitted through inadvertence in drafting the decree.

The decree is reversed, and the suit remanded.

*Decree reversed.*