PORTIA SILAS, Plaintiff-Appellant and Cross-Appellee, v. EMMA ROBIN-SON, Defendant-Appellee and Cross-Appellant.

First District (4th Division) No. 83—3096

Opinion filed March 7, 1985.—Rehearing denied April 11, 1985.

Kenneth A. Green, of Chicago, for appellant.

Charles Kraut, Ltd., of Chicago, for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Portia Silas (Silas) appeals from the judgment of the Cook County circuit court which dismissed her complaint against her sister, Emma Robinson (Robinson), for partition and accounting and which ordered her to execute a quitclaim deed to Robinson. Robinson cross-appeals from the trial court's order which denied her post-trial motion for attorneys' fees. The parties raise the following questions for our review:

1. Whether the trial court's finding that Silas' interest constituted an equitable mortgage in the real property at issue was erroneous as against the manifest weight of the evidence;

2. Whether the trial court's conclusion that the facts proved at trial established the existence of an equitable mortgage was legally erroneous;

3. Whether the trial court's denial of Robinson's post-trial motion for attorney fees pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611, formerly Ill. Rev. Stat. 1979, ch. 110, par. 41) was erroneous as an abuse of discretion.

We affirm.

Silas filed her complaint for partition and accounting on August 19, 1980. She alleged that she and Robinson were joint tenants of certain real property on the south side of Chicago, and that they had become owners of the property by purchase dated May 30, 1975. She further alleged that Robinson resided on the first floor of the premises and had control over the second floor, which Robinson rented to others. Silas claimed that Robinson had not adequately compensated her for Robinson's occupancy or for the rents collected. Based upon these factual allegations, she requested partition of the real property and an accounting from Robinson.

Robinson filed her answer, affirmative defense, and counterclaim on October 30, 1980. She alleged in pertinent part that when she and Silas purchased the property at a total price of $5,600, each of

them provided half of the total amount, or $2,800. She further claimed that she and Silas had agreed that Silas' money was a loan to Robinson, which Robinson would repay to Silas in full plus $400 in interest, for a total of $3,200. Robinson alleged that they had agreed that title to the property would be taken in joint tenancy, but that Robinson would actually be the buyer and owner of the property and that upon repayment of the $3,200, Silas would immediately deed her interest to Robinson. Lastly, she claimed that although she had repaid Silas in full, Silas refused to convey title to the property to her. Based upon these factual allegations, Robinson requested that the court order Silas to convey her interest to Robinson and that the court order Silas to pay reasonable attorney fees and court costs.

Following a bench trial of several days' duration in September and October 1983, at which Robinson, Silas, and Silas' husband testified, the trial court entered its judgment denying Silas the relief sought, ordering her to quitclaim her interest to Robinson, and directing her to pay Robinson's court costs. The court subsequently denied Robinson's motion for attorney fees. The parties' timely appeal followed.[1]

## I

 Silas first argues that the trial court's judgment was erroneous because the facts proved below demonstrate that no equitable mortgage was intended by Silas and Robinson. In support, Silas relies upon the factual theory she presented to the court below. This theory was that Silas borrowed a total of $3,200 from her husband to pay for her share of the purchase price of the property plus supplies for certain repairs, and that Robinson's payment of $135 per month to Silas was Robinson's rent payment to Silas. She further suggests, as she did before the trial court, that the receipts she gave Robinson for each of the $135 payments were to indicate the balance Silas still owed her husband on his loan to her, and were not meant to show any balance Robinson owed Silas herself for any loan of

---

[1]During the pendency of this appeal, both Silas and Robinson died. Upon proper motion to this court, suggestion of the death of Silas on September 26, 1984, was spread of record on October 26, 1984, and the special administrator of her estate substituted as party to this action on November 21, 1984. Similarly, suggestion of the death of Robinson on November 17, 1984, was spread of record on December 27, 1984, and the executor of her estate substituted as party in this appeal. We do not consider here the ramifications of the deaths of Silas and Robinson upon the legal issues discussed herein.

money. The trial court rejected this theory, however, based upon all of the testimonial and documentary evidence presented to it.

It is well established that " 'in a bench trial it is within the province of the trial court to determine the credibility and weight of testimony, to resolve the inconsistencies and conflicts, and to render its decision accordingly.' " (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 235, 445 N.E.2d 418, quoting *People v. Green* (1982), 104 Ill. App. 3d 278, 284, 432 N.E.2d 937, *appeal denied* (1982), 91 Ill. 2d 562.) A court of review cannot substitute its judgment for that of the trial court unless the manifest weight of the evidence fails to support the trial court's findings. (*Aetna Screw Products Co. v. Borg* (1983), 116 Ill. App. 3d 206, 213, 451 N.E.2d 1260.) This is especially so where testimony is conflicting and contradictory. *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 814, 439 N.E.2d 1005.

The trial court's judgment here was based upon several days of trial wherein the court had ample opportunity to assess the credibility of Robinson, Silas, and Silas' husband. In its written judgment, the trial court made specific, detailed and thorough findings of fact. The court determined that Robinson borrowed $2,800 from Silas to make the purchase and another $400 to make certain repairs and buy insurance because Robinson was "short of cash." The court also found that the sisters took title to the property as joint tenants "in order to guarantee the repayment of the $3,200 ***." It further concluded that "[i]t was agreed between the sisters that when the $3,200 was repaid [Silas] would quitclaim her interest in the building back to [Robinson]." The court found that Robinson made timely payments as agreed, obtained receipts from Silas for each payment, and took charge of the management and rehabilitation of the premises. The court determined that once the loan had been fully repaid, however, Silas offered to quitclaim her security interest only upon the payment of an additional $2,000, which Robinson refused to do. Thereafter the sisters filed their respective claims against each other. Based upon these findings, the court concluded that the parties intended that Robinson would buy the property with a loan from Silas; to secure her loan, Silas was given an undivided 50% ownership of the building with the understanding that when repaid, Silas would quitclaim the 50% back to Robinson. The court determined that Silas now refused to do so without payment of more money than that to which they had originally agreed. It is thus readily apparent that the court found Robinson's version more credible than that of Silas and her husband, and entered its judgment accordingly.

Based upon our review of the record, we cannot say that these findings were against the manifest weight of the evidence presented.

## II

■ Silas also suggests that the trial court's judgment was erroneous because the facts found by the court do not establish the existence of an equitable mortgage between the parties. We disagree.

"Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." (Ill. Rev. Stat. 1979, ch. 95, par. 55; see also, *e.g.*, *Wilkinson v. Johnson* (1963), 29 Ill. 2d 392, 398, 194 N.E.2d 328; *Warner v. Gosnell* (1956), 8 Ill. 2d 24, 30, 132 N.E.2d 526; *Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 909, 369 N.E.2d 498.) "Any evidence tending to show that the purpose and intention of the parties of the transaction was that of a loan and security is admissible." (*Burroughs v. Burroughs* (1971), 1 Ill. App. 3d 697, 703, 274 N.E.2d 376.) Thus, all of the circumstances surrounding the transaction are relevant to the parties' intent (*McGill v. Biggs* (1982), 105 Ill. App. 3d 706, 708, 434 N.E.2d 772), including parol evidence. (*Wilkinson v. Johnson* (1963), 29 Ill. 2d 392, 399, 194 N.E.2d 328; *Warner v. Gosnell* (1956), 8 Ill. 2d 24, 30, 132 N.E.2d 526.) Relevant factors to determine whether the deed absolute in form was intended to be a mortgage include the relation of the parties, the circumstances surrounding the transaction, the adequacy of consideration, and the situation of the parties after the transaction. (*Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 690, 460 N.E.2d 55; *Smith v. Fried* (1981), 98 Ill. App. 3d 467, 470, 424 N.E.2d 636.) Although proof of an equitable mortgage must be clear, satisfactory and convincing, it is not necessary that there be no conflict in the evidence presented. *Burroughs v. Burroughs* (1973), 11 Ill. App. 3d 176, 178, 296 N.E.2d 350.

The facts proved here amply establish that Robinson and Silas intended that the deed to both of them in joint tenancy would serve as security for Silas' loan to Robinson, which Robinson would repay in full at the rate of $135 per month. In addition, the evidence showed that Robinson managed and rehabilitated the property, by paying for repairs, real estate taxes, and insurance, and by occupying a portion of the premises and renting out the remainder. Silas, in contrast, contributed virtually nothing in repairs, maintenance, or taxes, nor did she attempt to occupy or otherwise take advantage of the benefits of ownership of the property. In short, both sisters re-

garded the premises as belonging to Robinson alone and considered Silas' initial contribution of $3,200 as a loan to Robinson so that she could purchase the property. As a result, the evidence clearly established that Silas' interest was an equitable mortgage which, once satisfied, obligated Silas to quitclaim the property to Robinson.

■ Silas also argues that there was never a mortgage between the sisters because according to Silas "conveyances of real estate cannot be by insinuation or oral agreement" but instead "must be in writing, clear and absolute." Here, however, Silas misunderstands the nature of an equitable mortgage. Silas first suggests that pursuant to section 3—401(1) of the Illinois Commercial Code regarding commercial paper, no person is liable on an instrument unless his signature appears thereon. (Ill. Rev. Stat. 1979, ch. 26, par. 3—401(1).) Consequently, according to Silas, there was no mortgage because Robinson never signed one naming Silas as mortgagor. No writing was required, however, since an equitable mortgage can be found on the basis of parol evidence. *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 690, 460 N.E.2d 55.

■ Next, Silas urges that there was no mortgage because none was ever recorded as required by statute. (Ill. Rev. Stat. 1979, ch. 30, par. 27.) Silas neglects the obvious, however, since the statutes also provided that a deed absolute in form is to be considered a mortgage if it appears that the parties intended it to serve only as a security. (Ill. Rev. Stat. 1979, ch. 95, par. 55.) Accordingly, a recorded deed which names two sisters as joint tenants may be treated as an equitable mortgage where the circumstances surrounding their transaction so indicate.

■ In addition, Silas claims that there was no mortgage because Robinson never signed any instrument agreeing to pay Silas on a definite date. There was no requirement that any part of the agreement be in writing. (*Miller v. Thomas* (1853), 14 Ill. 428.) The evidence presented here clearly established a debt relationship between Robinson and Silas, which was sufficient to find the creation of an equitable mortgage.

Silas also contends that there was no mortgage because "courts of equity have no power to substitute a different contract in the place of the one actually made; the interest of either party to a contract must be expressed in the language of the agreement." In support of this proposition of law, Silas cites *Hibernian Banking Association v. Davis* (1920), 295 Ill. 537, 129 N.E. 540. Although we do not disagree with the legal proposition of *Hibernian* upon which Silas relies, it is inapposite to the case before us since the evidence

here fully justified the trial court's decision.

Lastly, Silas argues that there was no mortgage because title to real property can be transferred only in writing, not by parol, and must sufficiently describe the property. We note once more that the theory of equitable mortgage takes into account all attendant circumstances, not merely the form of the deed or conveyance. Ill. Rev. Stat. 1979, ch. 95, par. 55; *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 690, 460 N.E.2d 55.

## III

 In her cross-appeal, Robinson argues that the trial court abused its discretion when it denied her post-trial motion for attorney fees. We disagree.

Section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611, formerly Ill. Rev. Stat. 1979, ch. 110, par. 41), provides that allegations and denials made without reasonable cause and found to be untrue shall subject the party pleading them to the payment of reasonable attorney fees and court costs actually incurred by the other party by reason of the untrue pleading. The remedy provided is penal in nature, and the trial court is given broad discretion as to any award granted. *Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 1004-05, 431 N.E.2d 1364; *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 650, 425 N.E.2d 1060.

Our review of the record leads us to conclude that although the trial court disbelieved the testimony of Silas and her husband, it did not find their testimony and other pleadings so spurious in nature as to justify the imposition of attorney fees. We cannot say that this decision was an abuse of discretion.

For the reasons stated, the judgments of the trial court are affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.