TRUSTEES OF SHEET METAL WORKERS LOCAL No. 1 WELFARE TRUST, Plaintiff-Appellant, v. AAA-NORTHGATE, INC., Defendant-Appellee.

Third District   No. 3—94—0177

Opinion filed February 9, 1995.—Rehearing denied March 23, 1995.

Jennifer S. Stevens, of Westervelt, Johnson, Nicoll & Keller, of Peoria (Thomas W. O'Neal, of counsel), for appellant.

Vonachen, Lawless, Trager & Slevin, of Peoria (Greg N. Grimsley, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiff-appellant, the trustees of Sheet Metal Workers Local No. 1 Welfare Trust, appeals from a judgment of the circuit court of Peoria County in favor of the defendant, AAA-Northgate, Inc. The circuit court found the plaintiff had failed to prove AAA-Northgate, Inc., was the alter ego of a previously existing business. Finding this determination is not against the manifest weight of the evidence, we affirm.

Initially, we note we have some doubt as to the jurisdiction of State courts in this type of case. This doubt is reenforced by the fact that all the cases cited and relied on by the parties are Federal cases, most of which stem from actions initiated before the National Labor Relations Board. Here, the plaintiff is essentially attempting to assert its rights under section 515 of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1145 (1988)). Under section

502(e)(1) of ERISA (29 U.S.C. § 1132(e)(1) (1988 ed. Supp. V)) Federal courts have exclusive jurisdiction over civil actions brought by fiduciaries such as the instant plaintiff/trust fund. However, courts in this State and others have interpreted the jurisdictional provisions of section 301(a) of the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. § 185(a) (1988)) as conferring jurisdiction on State courts to hear actions brought by union trust funds to recover contributions due under collective-bargaining agreements. See *Pierce v. P.J.G. & Associates, Inc.* (1986), 112 Ill. 2d 535, 494 N.E.2d 482; *Vermeer v. Tomken Construction, Inc.* (1980), 49 Or. App. 37, 618 P.2d 1301.

In the instant declaratory judgment action, the plaintiff seeks a determination that the defendant is the alter ego of a previous business and thus bound by a collective-bargaining agreement to make contributions to the fund. There was no challenge raised in the circuit court as to jurisdiction, although such a challenge may be raised any time. (*Geise v. Phoenix Co. of Chicago, Inc.* (1994), 159 Ill. 2d 507, 639 N.E.2d 1273.) Thus, relying on section 301 of the LMRA, we reach the merits of the plaintiff's claim on appeal.

The record shows that starting in 1977, Michael Kirk and his father, Robert Kirk, operated Northgate Heating and Air Conditioning as partners. The Kirks were members of the Sheet Metal Workers International Association Local No. 1 (the union). About 1980, union officials told the Kirks that as owners they could not receive union benefits and that one of them would have to become an employee in order to receive benefits. The Kirks decided Robert would become the employee and the business was continued as a sole proprietorship with Michael as owner. Also around this time, Michael purchased the assets of another heating and air conditioning business. Thereafter his business was known as AAA-Northgate Heating and Air Conditioning (referred to hereinafter as AAA-Northgate). The business continued making welfare contributions to various union funds for the benefit of Robert. Robert was the only employee of AAA-Northgate.

In March 1987, Robert retired and became eligible for full pension benefits from the union. That same month Michael Kirk and Jimmy Stevens formed AAA-Northgate Heating and Air Conditioning, Inc. (hereinafter AAA, Inc.). Michael and Stevens each owned 50% of the company. Stevens' business, Total Air Systems, became a wholly owned subsidiary of AAA, Inc. Each contributed vehicles and approximately $10,000 to the business.

At trial, Michael Kirk testified the primary business of the company was to be asbestos inspection. That is, Total Air Systems,

Inc., was to be the main business with the heating and air conditioning operations conducted as a side business. Jimmy Stevens testified that at the time AAA, Inc., was formed, it was contemplated that asbestos inspection was going to be a thriving business. However, according to Stevens, as a result of new government regulations and competition, asbestos inspection quickly became unprofitable for a small operation. (In March 1989, Stevens bought Total Air Systems from AAA, Inc., for $1,500 and ceased his ownership interest in AAA, Inc.)

The record shows AAA, Inc., operated for at least two months out of the home of Robert Kirk, just as AAA-Northgate had been operated out of the home. AAA, Inc., rented the sheet metal tools and equipment used by AAA-Northgate from Michael Kirk. AAA, Inc., used the same telephone number and ad in the local telephone book. For a time, AAA, Inc., used the billing and other forms used by AAA-Northgate. The defendant conceded that the business of AAA, Inc., and AAA-Northgate were the same, namely residential heating and air conditioning. AAA, Inc., also assumed a lease to a building owned by the Kirks and continued paying rent to Robert Kirk.

On the other hand, AAA, Inc., maintained separate banking accounts from those of AAA-Northgate. Michael Kirk testified he was careful to keep the warranty work from AAA-Northgate separate from the subsequent work he did for AAA, Inc.

The record also shows that sometime in the spring or summer of 1987, AAA, Inc., hired a sheet metal worker. AAA, Inc., subsequently hired other sheet metal workers. These workers were not paid union scale, nor were contributions made to union trust funds on behalf of these workers.

At the conclusion of the bench trial, the court found the plaintiff failed to prove AAA, Inc.'s formation was motivated by anti-union animus. The plaintiff also failed to prove there was a substantial continuity of work force between AAA-Northgate and AAA, Inc., and that AAA, Inc., was the alter ego of AAA-Northgate. The court entered judgment for AAA, Inc. In denying the plaintiff's subsequent post-trial motion, the circuit court found that the formation of AAA, Inc., did not result in an expected or reasonably foreseeable benefit to AAA-Northgate related to the elimination of its labor obligations.

On appeal, the plaintiff argues, *inter alia*, that the circuit court utilized the wrong test or standard, and that under the proper test the facts show AAA, Inc., was the alter ego of AAA-Northgate.

Two of the cases found to be controlling by the circuit court concerned successorship liability. (See *National Labor Relations Board v. Burns International Security Services, Inc.* (1972), 406 U.S.

272, 32 L. Ed. 2d 61, 92 S. Ct. 1571; *Fall River Dyeing & Finishing Corp. v. National Labor Relations Board* (1987), 482 U.S. 27, 96 L. Ed. 2d 22, 107 S. Ct. 2225.) In those cases the central issue involved union representation and whether a majority of employees of the successor company had been employees of the predecessor company. If such a situation was found to exist, then the successor company was obligated to bargain with the union which had represented the employees in the predecessor company. The successor company was generally not bound by the specific terms of any collective-bargaining agreement between the predecessor and the union. Its only obligation was to bargain in good faith with the union. See, *e.g., Esmark, Inc. v. National Labor Relations Board* (7th Cir. 1989), 887 F.2d 739.

In the instant case there was no continuity of work force. Robert Kirk was the only employee of AAA-Northgate and he retired at the time AAA, Inc., was formed. Those employees subsequently hired by AAA, Inc., had never been employees of AAA-Northgate. Thus, the successorship analysis utilized in *Burns* and *Fall River Dyeing* would not apply to the instant case.

On the other hand, the circuit court also relied on *National Labor Relations Board v. Omnitest Inspection Services, Inc.* (3d Cir. 1991), 937 F.2d 112, in finding AAA, Inc., was not the alter ego of AAA-Northgate. It was alter ego status which the plaintiff in this case sought to prove because under this doctrine, AAA, Inc., could be held subject to all the legal and contractual obligations of AAA-Northgate, including the collective-bargaining agreement and the derivative obligation to make contributions to union pension and welfare funds. See *Howard Johnson Co. v. Detroit Local Joint Executive Board, Hotel & Restaurant Employees & Bartenders International Union* (1974), 417 U.S. 249, 259 n.5, 41 L. Ed. 2d 46, 55 n.5, 94 S. Ct. 2236, 2242 n.5.

■ Alter ego status is established when there is a mere technical change in the structure or identity of the employing entity. (*National Labor Relations Board v. Omnitest Inspection Services, Inc.* (3d Cir. 1991), 937 F.2d 112.) The circumstances surrounding a change in corporate form must be examined to determine whether the change resulted in a *bona fide* discontinuance and a true change in ownership or was merely a disguised continuance of the old employer. (*Southport Petroleum Co. v. National Labor Relations Board* (1942), 315 U.S. 100, 86 L. Ed. 718, 62 S. Ct. 452.) Each case turns on its individual facts, but generally alter ego status is found where the two enterprises share substantially identical management, business purpose, operation, equipment, customers and supervision as well as ownership. (*Amalgamated Meat Cutters & Butcher Workmen of North*

*America, AFL-CIO, Local 576 v. National Labor Relations Board* (D.C. Cir. 1980), 663 F.2d 223; see also *Crawford Door Sales Co.* (1976), 226 N.L.R.B. 1144.) For an alter ego relationship to exist, a purpose to avoid the old employer's labor obligations under a collective-bargaining agreement or under the National Labor Relations Act must underlie the formation of the new employer. *National Labor Relations Board v. Omnitest Inspection Services, Inc.* (3d Cir. 1991), 937 F.2d 112.

A determination of alter ego status is a question of fact. (*National Labor Relations Board v. Allcoast Transfer, Inc.* (6th Cir. 1986), 780 F.2d 576.) Although a trial court's decision is always subject to review, a reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. (*In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506.) A court of review cannot substitute its judgment for that of the trial court unless the manifest weight of the evidence fails to support the trial court's findings. *Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 477 N.E.2d 4.

In the instant case, the factors determining alter ego status cut both ways. On the one hand, AAA, Inc.'s heating and air conditioning operations served the same type of customer base, *i.e.*, residential, that AAA-Northgate served. When AAA, Inc., began operations, it operated out of the home of Robert Kirk just as AAA-Northgate had. It utilized the same phone number, billing forms and telephone ad. AAA, Inc., used the same equipment as AAA-Northgate, which it rented from Michael Kirk. AAA, Inc., assumed the obligation for the lease of at least a portion of a building owned by the Kirks. Jimmy Stevens testified he had very little to do with the heating and air conditioning operations of the company, and that he left the management of the sheet metal work to Michael Kirk. Thus, as with AAA-Northgate, Michael Kirk was the sole manager of the same type of work.

■ When Stevens withdrew from ownership in 1989, and bought Total Air Systems from AAA, Inc., AAA, Inc., became all but indistinguishable from its predecessor, AAA-Northgate. However, we believe the dispositive point in time is at the formation of AAA, Inc., in March of 1987. At that time, Stevens and Kirk each held a 50% interest in the company. They equally contributed capital to the new business. Thus, the ownership of AAA, Inc., was substantially different from AAA-Northgate. In March 1987, Stevens and Kirk believed that asbestos inspections would be their main line of business, with the heating and air conditioning business a "trailer." Thus, the busi-

ness purpose and operations of AAA, Inc., at least initially, was envisioned to be substantially different from that of AAA-Northgate. The fact that the asbestos business did not succeed and that Kirk eventually returned full time to sheet metal work is irrelevant to our determination.

On review of the record, we cannot say the circuit court's decision was against the manifest weight of the evidence. Though we might have held differently, we will not substitute our judgment for that of the trier of fact.

While it is troubling that Robert Kirk now receives full pension benefits, and his son has chosen to continue business as a nonunion shop, *i.e.*, no longer contributing to the union trust funds, this court does not sit in judgment of "moral obligations." We find the circuit court's decision was not against the manifest weight of the evidence. Therefore, the plaintiff cannot utilize alter ego status as an avenue to enforce any legal obligation which may exist.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON and BRESLIN, JJ., concur.