JUNE FLACK, Plaintiff-Appellee, v. LORETTA McCLURE, Indiv. and as Adm'r of the Estate of John McClure, Defendant-Appellant.

First District (6th Division)   No. 1—90—0175

Opinion filed November 30, 1990.

Robert A. Morelli, Ltd., of Chicago, for appellant.

Russell V. Sutton, of Chicago, for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff brought suit July 3, 1985, against defendants for specific performance on a house sale. On September 10, 1985, the trial court granted plaintiff's motion to amend her complaint to include an additional claim for an equitable mortgage alleging the defendants had recorded a quitclaim deed given only as security for a $9,000 loan from defendants. A second amended complaint was filed by agreed order October 22, 1985. On February 21, 1986, the court granted defendant's motion to strike the equitable mortgage claim from the second amended complaint. On March 21, 1986, plaintiff filed a third amended complaint in compliance with the earlier order.

Defendant John McClure died March 2, 1987, and his death was spread of record December 4, 1987, four days before the trial began. The trial court appointed his wife and codefendant, Loretta McClure, special administrator for purpose of the trial. At the close of plaintiff's case, the trial court permitted plaintiff to amend her complaint to add an equitable mortgage claim to conform with the evidence presented. Following trial, the court ordered defendant to reconvey the property to plaintiff and imposed an equitable mortgage payable from plaintiff to defendant in the amount of $45,757.64.

Defendant appeals, citing as error by the trial judge (1) the admission at trial of the deposition testimony of John McClure, (2) the amendment of the complaint during trial to add an equitable mortgage claim, and (3) the manifest weight of the evidence was insufficient to support a finding that an equitable mortgage should be imposed.

On September 11, 1984, plaintiff signed a contract to sell her southside building to the defendants for $80,000. The defendants also signed the contract, and the closing was scheduled for October 16, 1984. We note that the real estate contract attached as an exhibit to the complaint recites, in pertinent part, "Purchaser has paid $1,000 *** as earnest money to be applied on the purchase price ***." The sale was never completed because the defendants were unable to secure the required $60,000 financing.

On the day the sales contract was signed, September 11, 1984, plaintiff asked the defendants for $9,000, saying she needed money to pay off a college tuition payment for her son. The defendants, represented by counsel, loaned plaintiff the money in exchange for a quitclaim deed. Plaintiff argues that the deed was given as security, but the defendant argues the deed was an absolute conveyance of the property.

The defendants were unable to get financing to proceed with the scheduled closing on October 16, 1984. The holder of the first mortgage foreclosed on the property, and in December 1984 the property was offered for sale by the Cook County sheriff. Ivory Bennett, a nonlitigant here, bought the property at the sheriff's sale for $35,000. In an effort to prevent the Bennett sale from being finalized, the defendants recorded the quitclaim deed and subsequently redeemed the property in June 1985, on the final day of the redemption period, by paying the sheriff's office $36,757.64.

In July 1985 plaintiff sued defendants seeking specific performance on the original sales contract. The pretrial judge granted plaintiff leave to amend her complaint to include a claim for an equitable mortgage. The same judge later granted defendant's motion to strike the equitable mortgage claim.

At trial before a different judge, plaintiff testified on direct examination and her cross-examination was begun on the first day of trial, December 8, 1987. At the end of the first day's testimony, defense counsel indicated that he would continue his cross-examination of plaintiff the following day. The court reporter's notes were lost for the second day of trial, December 9, 1987, and for that reason the balance of plaintiff's cross-examination testimony is not part of the record before us.

On May 10, 1988, before the trial resumed for a third day, the trial judge permitted plaintiff to amend her complaint again to include a claim for equitable mortgage. The trial resumed for a third day, July 22, 1988, and defendant Loretta McClure testified on direct examination. The trial was recessed thereafter to afford plaintiff an opportu-

nity for further discovery. The trial resumed on September 5, 1989, the final day of trial. At that time, Loretta McClure was too ill to testify on cross-examination and was never cross-examined.

On the final day of trial, over defense objection, the court granted plaintiff's motion to admit the entire deposition testimony of the deceased, John McClure. The parties stipulated at trial that the defendants were unable to obtain a mortgage for the property and therefore did not complete the sales contract.

In her ruling at the conclusion of the trial, the trial judge found the equities were with the plaintiff, ordered defendant to reconvey the property to plaintiff and declared an equitable mortgage in the defendant's favor in the amount of $45,757.64—the cost of the redemption together with the $9,000 "loan." Defendant appeals from that order, citing three errors by the trial judge as issues here. Defendant contends the trial court improperly admitted John McClure's deposition into evidence, improperly permitted plaintiff to amend her complaint to include an equitable mortgage count, and erred when it found sufficient evidence to impose an equitable mortgage.

We first consider whether the trial judge erred in admitting the deposition testimony of deceased defendant John McClure. Supreme Court Rule 202 (107 Ill. 2d R. 202) distinguishes between discovery and evidence depositions. Rule 202 states: "The notice, order, or stipulation to take a deposition shall specify whether the deposition is to be a discovery deposition or an evidence deposition. In the absence of specification a deposition is a discovery deposition only. If both discovery and evidence depositions are desired of the same witness they shall be taken separately, unless the parties stipulate otherwise or the court orders otherwise upon notice and motion." 107 Ill. 2d R. 202.

Defendant contends McClure's deposition testimony was inadmissible, because (1) it was taken for discovery purposes only and (2) it was not signed by McClure. Plaintiff argues, however, that the deposition was admissible because notice to the defendants indicated that it would be for both discovery and evidentiary purposes. Plaintiff argues also that the defendant's attorney, through her conduct, agreed to the dual purpose when she remained silent when the plaintiff's attorney stated on the record the dual purpose of the deposition.

■ Defendant argues that conduct by an attorney is not enough to create a "stipulation" under the law. While a stipulation need not follow any particular form, it must be clear, certain and definite in its material provisions. (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 4, 424 N.E.2d 1239, 1242.) Defendant argues that if the

decision is allowed to stand, any party would be able to take simultaneous discovery and evidence depositions on their own notice—in essence rewriting Supreme Court Rule 202.

■ Plaintiff notes that notice to the defendants indicated the dual purpose of the deposition and that the dual purpose was repeated at the beginning of the deposition. A stipulation is like a contract, and the court will look to the actual intention of the parties. (*Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 989, 326 N.E.2d 74, 86.) The agreement need not require a meeting of the minds. A subjective understanding is not requisite. Conduct can indicate the terms of the agreement. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330-31, 371 N.E.2d 634, 638-40.

Plaintiff relies on a case where a discovery deposition was allowed as an evidence deposition because the deponent lived in another State and was not expected to or able to travel for the trial. There the court found the opposing party had actual notice because the parties discussed in court the witness's inability to travel. (*In re Estate of Ragen* (1981), 96 Ill. App. 3d 1035, 1046, 422 N.E.2d 179, 187.) Defendant distinguished *Ragen* by noting the fact there that the witness had always been unable to travel, whereas the parties in this case could not have known ahead of time that John McClure would not be available for trial.

Here, in admitting the deposition testimony, the trial judge stated that the comments published with the rules show the purpose behind Rule 202. The comments state in pertinent part: "[T]he federal practice of combining evidence and discovery depositions tends to impair and restrict discovery, encourage objections and motions and other disruptions of orderly procedure, and to afford a means of entrapment of the unwary and inexperienced." Ill. Ann. Stat., ch. 110A, par. 202, Historical & Practice Notes, at 261 (Smith-Hurd 1985).

■ The trial court found proper notice was given and that the dual purpose of the deposition was stated on the record, giving opposing counsel the opportunity to object. "Certainly counsel is aware of the evidentiary portion of this and could have taken whatever measures were necessary to protect her client in the event the deposition would be used as evidence, so I don't think under these circumstances that the reasons for Rule 202 have been disregarded." The trial court also found the deposition could be entered without a signature because the signature requirement was impossible to meet when McClure died before the deposition was transcribed. We find the court did not err in admitting the deposition testimony of John McClure.

We next consider whether the trial court erred in permitting

plaintiff to amend her complaint to add a claim for equitable mortgage. The pretrial judge assigned to the case permitted an equitable mortgage claim to be added to the complaint but subsequently struck that claim from the complaint upon defendant's motion. At trial before a different judge, plaintiff was given leave to amend her complaint to add a claim for an equitable mortgage to conform to the proof plaintiff presented at trial.

Defendant cites *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121, 382 N.E.2d 1217, for the proposition that a prior court order cannot be overturned unless there is a showing that the original order was incorrect or erroneous. However, in *Towns*, the supreme court urged the trial court to vacate or amend prior orders only after careful consideration, but went on to state that the trial judge is not bound by the order of a previous judge and can correct orders "which it considers to be erroneous." (*Towns*, 73 Ill. 2d at 121.) In *Towns*, as in this case, the litigation went to a second judge for trial as a matter of procedure.

■ A 1980 appellate court case that gave extensive consideration to amending pleadings stated that courts should permit liberal amendments in the interest of justice. (*Pickett v. First American Savings & Loan Association* (1980), 90 Ill. App. 3d 245, 249-50, 412 N.E.2d 1113, 1117-18.) The materiality of an amendment to conform to the evidence must be apparent, so that defendant is not prejudiced. *Pickett*, 90 Ill. App. 3d at 250.

■ Plaintiff relies on *Pickett* and argues that no prejudice has been done to defendant here since throughout the trial sufficient evidence was adduced to establish a basis for the imposition of an equitable mortgage. The amendment was allowed at the close of plaintiff's case to conform to the trial evidence. The first two days of trial occurred in December 1987. The amendment was permitted May 10, 1988. From May 10, 1988, to July 22, 1988, the third day of trial, the defendant had adequate time to prepare a defense to the equitable mortgage claim. In addition, trial was recessed the afternoon of July 22, 1988, to permit plaintiff additional time for discovery, and the final day of trial took place on September 5, 1989, 16 months after plaintiff was allowed to amend her complaint to include the equitable mortgage claim. Clearly the defendant had adequate time to prepare a defense to the equitable mortgage claim. She was not prejudiced when the amendment was permitted. Consistent with the holdings in *Towns* and *Pickett*, we find the trial court did not err in permitting plaintiff to amend her complaint.

■■ Finally, we consider whether the evidence was sufficient to

support the imposition of an equitable mortgage. "Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." (Ill. Rev. Stat. 1983, ch. 95, par. 55.) Whether a deed is to be taken as a mortgage depends on the intentions of the parties. (*Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 690, 460 N.E.2d 55, 59.) In order to convert a deed absolute on its face into a mortgage, the proof must be clear, satisfactory and convincing and can come from almost every conceivable fact that could legitimately aid that determination. (*McGill v. Biggs* (1982), 105 Ill. App. 3d 706, 708, 434 N.E.2d 772, 773.) The burden of proof rests upon the party asserting a mortgage where a deed absolute was conveyed. *Havana National Bank v. Wiemer* (1975), 32 Ill. App. 3d 578, 585, 335 N.E.2d 506, 512.

Since the question of whether to impose an equitable mortgage is based on fact, consideration of the trial testimony is essential. Deeds have been set aside where evidence showed a preexisting debt and the grantee retained a promissory note or other evidence of the debt where an agreement to reconvey was entered into at the same time or where the price paid was far below the fair value of the property. *Wilkinson v. Johnson* (1963), 29 Ill. 2d 392, 404, 194 N.E.2d 328, 335.

At trial, plaintiff testified that she intended the $9,000 to be an advance on their $80,000 contract. She testified that defendant John McClure assured her the quitclaim deed would not be recorded but would be held as security. She testified she relinquished the quitclaim deed "to show that I was an honest person. I really appreciated him giving me an advance of the $9,000 so that my kid could go to school."

Plaintiff testified that later defendant Loretta McClure assured her the closing would occur prior to the sheriff's sale. Plaintiff stated: "She told me not to worry, that God would help me, and that everything would be taken care of." Evidence admitted at trial included the sales contract and a letter signed by plaintiff dated September 12, 1984, that acknowledged receipt of a $9,000 cashier's check from defendant John McClure. The letter did not indicate the purpose of the $9,000 payment but it did identify plaintiff as the owner of the four-flat building.

Plaintiff also testified that before the redemption period ended, the McClures indicated they were no longer interested in purchasing the property and she subsequently located a second buyer who was willing to pay $75,000. Plaintiff testified that she asked for a return of the quitclaim deed from the defendants, promising to give them

$9,000 after the June 7, 1985, closing. Plaintiff testified that the defendants told her they would not give her the deed until she repaid them $9,000. The second sale was never consummated.

John McClure's deposition testimony was admitted over defendants' objection. In his deposition, he testified he gave plaintiff $9,000 in exchange for the quitclaim deed. The deposition includes the following questions and answers between plaintiff's counsel and John McClure: "At the time Miss Flack-Bargyh gave you the deed, did you feel you owned the property?" "Yes, I think so." "Did you feel that if Miss Flack-Bargyh gave you $9,000 in return, paid you the $9,000 back, that you would be legally obligated to return her deed?" "Sure."

Later in the deposition he testified: "At the time we found we could not get the mortgage, if she gave me that $9,000 back, I would give her the quitclaim deed back." Still later in the same deposition, the following colloquy took place between plaintiff's attorney and John McClure: "It was your intention for you to give the quitclaim deed back if she gave you your $9,000?" "That's correct." "At all times?" "That's correct."

John McClure testified in his deposition that he knew of the impending sheriff's sale and told plaintiff that he believed they could close on the deal before the sheriff's sale. He also testified that his attorney sent someone to the sheriff's sale to bid on the property.

Defendant Loretta McClure testified at trial that the quitclaim deed is what plaintiff offered for the $9,000 given to her on the mortgage. She further testified that she and her husband chose to redeem the property on the final day of the redemption period because "that's the only hope we had of receiving the money that was given— that she had asked for for the *mortgage*." (Emphasis added.)

■ The trial court in its findings at the close of trial made reference to John McClure's testimony only, noting that he conceded that the quitclaim deed was taken as security. Defendant argues that plaintiff's entire case is premised on John McClure's testimony and therefore has no support without its admission. Plaintiff argues that John McClure's testimony simply corroborates Loretta McClure's testimony. We find that Loretta McClure's testimony showed evidence that the deed was not given as an absolute conveyance but rather as a security interest for the $9,000. She specifically identified the transaction as money given "for the mortgage."

■ In a bench trial it is within the province of the trial court to determine the credibility and weight of testimony, to resolve inconsistencies and conflicts and to render its decision accordingly. (*Silas v.*

*Robinson* (1985), 131 Ill. App. 3d 1058, 1061, 477 N.E.2d 4, 6-7.) Though conflicts in evidence exist, a court can still find an equitable mortgage. *Burroughs v. Burroughs* (1973), 11 Ill. App. 3d 176, 177, 296 N.E.2d 350, 351.

Six factors are to be considered by the trial judge to determine whether an equitable mortgage exists. Those factors include whether a debt exists, the relationship of the parties, whether legal assistance was available, the sophistication and circumstances of each party, the adequacy of the consideration and who retained possession of the property. *McGill*, 105 Ill. App. 3d at 708; *Beelman*, 121 Ill. App. 3d at 689.

The existence of a debt is the essential element to establish an equitable mortgage. (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 909, 369 N.E.2d 498, 502.) But the fact that the mortgage was made for a future debt or that there was no fixed time for repayment does not affect the status of an instrument as a mortgage. *Davidson v. Iwanowski* (1950), 341 Ill. App. 152, 166, 93 N.E.2d 139, 145-46.

The existence of a debt here does not appear to be in doubt. The court in *McGill* found an indication of a debt relationship in a defendant's attempt to collect and held that an agreement to reconvey has long been considered a significant factor in distinguishing a sale from a mortgage. (*McGill*, 105 Ill. App. 3d at 709-10.) Both defendants testified they tried to get the $9,000 back. John McClure said more than once that he would have returned the deed had plaintiff returned the $9,000. In addition, plaintiff signed a note which the defendants retained. Where the grantor is indebted to the grantee at the time of the conveyance, and the grantee retains the note evidencing the indebtedness, then the indebtedness was not satisfied by the conveyance, and, until the contrary is shown, it will be presumed that a mortgage is intended. *Havana National Bank*, 32 Ill. App. 3d at 584.

*Beelman* and *McGill* also hold that a court could consider the prior relationship of the parties, if any. The record does not indicate that the parties had any prior relationship, business or otherwise. The court should also consider whether or not the parties had the benefit of legal assistance at the time of the occurrence. The record indicates that plaintiff did not have advice of counsel when she accepted the $9,000, signed the note and relinquished the quitclaim deed to the defendants whereas the defendants were represented by counsel.

*Beelman* and *McGill* also considered the sophistication and circumstances of each party. Here, we do not know the defendants' fi-

nancial situation except that they were unable to obtain the necessary financing to close the real estate purchase on the scheduled closing date, October 16, 1984. The record shows plaintiff had a school tuition payment due and was behind on her mortgage payments to the point that her property was about to be foreclosed by the mortgage holder. The record discloses nothing about the sophistication of plaintiff or defendants.

*Beelman* and *McGill* identify a fifth factor: the adequacy of consideration. Where consideration is grossly inadequate, a mortgage is strongly indicated. (*McGill*, 105 Ill. App. 3d at 708.) Here, the defendants signed an $80,000 contract on the home at the same time they gave plaintiff $9,000. Defendants argue that, in light of the building's poor condition, "it is clear the actual value of the property was significantly less." However, in his deposition testimony, John McClure acknowledged that he still would have gone through with the $80,000 contract if he could have obtained a mortgage. Clearly, the $80,000 price was the agreement of the parties, and the defendant may not now argue that the value of the property was "significantly less."

The final factor the *McGill* court considered is whether the grantor of the deed remained in possession of the property. (*McGill*, 105 Ill. App. 3d at 709-10.) In her analysis, the trial judge noted that plaintiff stayed in the home for a year after she gave the defendants the quitclaim deed. Plaintiff remained in the home until the defendants successfully obtained a court order requiring plaintiff to vacate the premises, and this occurred after the defendants had recorded the quitclaim deed and redeemed the property from the foreclosure sale. We find that the trial evidence clearly supports the finding of an equitable mortgage and that the trial court's decision was consistent with the manifest weight of the evidence. We find no error.

For all of the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.